UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BILLIE DISPAINE )<br>    Plaintiff )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE )<br>Commissioner of Social Security )<br>    Defendant ) | NO. 1:10-CV-162<br>COLLIER/CARTER |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 9), defendant's Motion for Summary Judgment (Doc. 13), and plaintiff's Response in Opposition to the Commissioner's Motion for Summary Judgment (Doc. 15).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

For reasons that follow, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Claim for Benefits

Plaintiff applied for Social Security Disability Insurance Benefits (DIB) on July 11, 2006, alleging disability since April 18, 2006, due to carpal tunnel syndrome, nerve damage both hands (Tr. 77-81, 94). After her application was denied initially and upon reconsideration, Plaintiff

1

requested an administrative hearing (Tr. 61-68, 71). The administrative law judge (ALJ) held a hearing on April 22, 2008, at which Plaintiff appeared (with counsel) and testified (Tr. 24-44). In a decision dated May 20, 2008, the ALJ found Plaintiff was not disabled because she could perform a significant number of jobs despite the limitations caused by her impairments (Tr. 11-20). On April 30, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1). *See* 20 C.F.R. §§ 404.955, 404.981. Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step.

2

20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990).

Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since April 18, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: carpal tunnel syndrome, obesity and anxiety (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), involving no repetitive use of the hands and simple instructions.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on xxxxxxx x, 1962 and was 43 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2006 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-20).

## Issue Raised

Plaintiff argues the ALJ erred by determining Plaintiff has the residual functional capacity to do light work despite the fact that the plaintiff was suffering from severe and disabling conditions which include carpal tunnel syndrome, adjustment disorder with anxiety and depression, a learning disorder, and borderline intellectual functioning, and despite the fact that her primary treating physician placed her at a below sedentary residual functional capacity.

4

Relevant Facts

A. Personal and Vocational Evidence and Testimony

Plaintiff had a limited education and was forty-five years old at the time of the ALJ's May 2008 decision (Tr. 19). A vocational expert testified at Plaintiff's April 2008 hearing that Plaintiff had past relevant work as a sewing machine operator in a chair factory, which was light, semi-skilled work, and a fast-food worker, which was light, unskilled work (Tr. 42). The ALJ asked the vocational expert to consider a person with Plaintiff's vocational characteristics who could perform light work that required simple instructions and no repetitive use of the hands (Tr. 42). The vocational expert testified such a person could perform the requirements of representative occupations such as production inspecting jobs (1,500 jobs regionally, 150,000 jobs nationally) and machine tender jobs (12,000 regionally, 120,000 nationally) (Tr. 42).

B. Medical Evidence - Physical

Prior to her alleged onset date of disability (April 18, 2006), Plaintiff saw Dr. J. Patterson Stone for various complaints, including pain in her right hand and shoulder (Tr. 260-67). In February 2005, Plaintiff returned to Dr. Stone and reported recurrent hand pain with numbness and swelling (Tr. 259). X-rays of Plaintiff's wrists were normal and she had no weakness present, but tests were positive for carpal compression, Phalen's (wrist flexion testing that may indicate carpal tunnel syndrome), and Tinel's (tapping on wrist to see if it invokes sensation in hand that may indicate carpal tunnel syndrome) bilaterally; Plaintiff underwent right carpal tunnel release in April 2005 and left carpal tunnel release in August 2005 (Tr. 245-59). Post-operatively, Plaintiff was released to return to full duty work in November 2005; she had equal grip strength and intact sensation (Tr. 247). Upon returning to full duty, Plaintiff

5

complained of increased pain, swelling, and numbness in her hands in December 2005 (Tr. 246). Dr. Stone found no evidence of significant enduration (hardening), erythema (redness), or increased warmth; Phalen's and Tinel's did not cause significant exacerbation of symptoms (Tr. 246). Dr. Stone recommended a ten-pound lifting restriction, use of daytime and night-time supports, and limited frequency and duration of grabbing and pulling type activities with the hand (Tr. 246). In January 2006, Dr. Stone rated Plaintiff's upper extremity impairment at nine percent based on the "AMA Guides Evaluation of Permanent Impairment, V Ed." (Tr. 245).

In September 2006, Dr. William Holland performed a consultative examination on Plaintiff for the state agency; Plaintiff reported returning symptoms of pain and spasm in her hands and forearms due to bilateral carpal tunnel syndrome (Tr. 214). Dr. Holland noted Plaintiff's range of motion was normal in her shoulders, elbows, wrists, hands, back, hips, knees, and ankles (Tr. 216). She had a trace of edema in both ankles, but no atrophy in her hands, her grip strength was 5/5 bilaterally, straight leg raise was negative, and she was neurologically intact (Tr. 216). Based on his examination, Dr. Holland opined that Plaintiff had no physical limitations (Tr. 217). In October 2006, Dr. Marvin Cohn, a DDS medical consultant, opined Plaintiff had no severe physical impairments (Tr. 233-36).

Plaintiff did not receive further treatment from Dr. Stone until November 2006, when she reported complaints of burning, tingling, and tightness in her hands over the past month (Tr. 244). Dr. Stone noted Plaintiff had not worked since March or April of 2006, "when she was laid off" (Tr. 244). Plaintiff's muscle strength was 4/5 in all groups in each arm with no discernable swelling, erythema, and nondermatomal numbness. Dr. Stone described her fairly diffuse complaints as being of questionable etiology (Tr. 243-44). On November 30, 2006, he

6

ordered a neck MRI to determine if Plaintiff's symptoms were due to a condition in her neck (Tr. 243).

The neck MRI, taken in December 2006, showed a small disc protrusion at the C4-5 level with mild narrowing (but no evidence of nerve-root compression), and minimal disc bulges at the C5-6 and C6-7 levels without significant stenosis or nerve root foraminal stenosis (Tr. 242).

In February 2007, Dr. Frank Pennington, a non-examining State Agency Physician, reviewed the medical evidence and opined that Plaintiff could perform medium work, but was limited to frequent pushing and/or pulling, handling, and fingering with her arms and hands, and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 269-72).

C.  Medical Evidence - Mental

In September 2006, James Biller, M.S., conducted a psychological evaluation of Plaintiff (Tr. 209). Plaintiff denied mental health treatment or psychotropic medications (Tr. 210). She alleged disability due to physical problems, but reported special education classes in school (Tr. 210). She denied having marital, occupational, or social problems due to mental illness (Tr. 210). Plaintiff reported depressive symptoms including feelings of sadness, worthlessness, and frustration (Tr. 210). She stated she was able to manage finances on her own, and performed household chores such as sweeping, doing laundry, washing dishes, and shopping for groceries (Tr. 211). On administration of Wechsler Intelligence Testing, Plaintiff scored a full scale IQ of 71, which placed her in the borderline range of intelligence (Tr. 212). Biller diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depressed mood, a learning disorder, and borderline intellectual functioning, and assigned her a Global Assessment of Functioning

7

(GAF) score of 60 (Tr. 212-13), which reflected "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning."

Biller opined Plaintiff's borderline intellectual functioning and learning disabilities moderately affected her ability to understand and remember simple and/or detailed instructions, and her ability to sustain concentration and persistence; it (along with her physical health problems) minimally to mildly affected her ability to adapt to changes in the work environment and to be aware of hazards and travel unaccompanied in unfamiliar places or use public transportation; and her depression and anxiety minimally affected her ability to interact with peers and supervisors in a standardized work setting (Tr. 213). Biller's evaluation was also signed by supervising psychologist Dr. James Milliron (Tr. 213).

Later in September 2006, Dr. Karen Lawrence, a psychologist, reviewed Plaintiff's mental health records and opined Plaintiff had mild restriction of activities of daily living and difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 229). Dr. Lawrence opined Plaintiff could understand, remember, and carry out simple one and two step, detailed, but not complex instructions; would have difficulty, but still can attend to, and persist with simple repetitive tasks; and could adapt to gradual, infrequent changes (Tr. 239).

D. Evidence Submitted to Appeals Council Following the ALJ's Decision

In 2008 and 2009, Plaintiff received mental health treatment at the Crisis Stabilization Unit at Johnson Mental Health (Tr. 285-375). She was diagnosed with major depressive disorder and assigned GAF scores ranging from 42 to 55 (Tr. 285-375).

Specifically, in June 2008, Plaintiff was evaluated by mental health counselor Preston

8

Goforth, who diagnosed Plaintiff with major depressive disorder (single episode, severe without psychotic features) and assigned her a GAF score of 50 (Tr. 297-301). In December 2008, Plaintiff's diagnosis was unchanged, but his GAF score was changed to 42 (Tr. 290-291). In March 2009, Dr. Randall Brewer assigned Plaintiff a GAF score of 53 (Tr. 360-361). In October 2009, Dr. Glenn Peterson, in a supervisory capacity, agreed with a counselor's assigning Plaintiff a GAF score of 55 (Tr. 372-373).

Analysis

Plaintiff argues the ALJ erred by determining Plaintiff has the residual functional capacity to do light work despite the fact Plaintiff was suffering from severe and disabling conditions which include carpal tunnel syndrome, chronic cholecystitis, status post cholecystectomy, migraines, adjustment disorder with anxiety and depression, a learning disorder, and borderline intellectual functioning, and despite the fact that her primary treating physician placed her at a below sedentary residual functional capacity.

Plaintiff argues the ALJ erred in failing to defer wholly to the opinions of his treating physician, Dr. Stone. Specifically, Plaintiff argues the ALJ did not accord proper weight to Dr. Stone's ten-pound lifting restriction; his recommendation for daytime and night-time supports, and limited frequency and duration of grabbing and pulling type activities with the hand; and his recommendation that Plaintiff find other employment if such duty is not available (Tr. 246). Pl. Br. at 7-13.

Generally, the opinions of treating physicians are given substantial, if not controlling, deference. *See King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984); 20 C.F.R. § 404.1527(d)(2). However, a treating physician's opinion is given controlling weight only when it is "well-

9

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ does not give controlling weight to a treating physician's medical opinion, the ALJ should apply the factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) to determine how much weight to give the opinion, and provide "good reasons" for the weight given to the opinion. 20 C.F.R. § 404.1527(d)(2); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for h[is] rejection.").

In this case, the ALJ declined to give controlling weight to Dr. Stone's opinion in December 2005 that Plaintiff could only lift ten pounds because his opinion lacked support and was inconsistent with Dr. Stone's own finding in January 2006 that Plaintiff only had a nine percent upper extremity impairment (Tr. 19, 245). *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); § 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The ALJ also relied on other evidence of record including Dr. Holland's consultative examination and the opinion of two state agency medical consultants. His analysis was as follows:

> As for the opinion evidence, I note that Dr. Stone recommended a ten pound lifting restriction in December 2005; however, this opinion was apparently based on the claimant's complaints, as his treatment notes and examinations show no

10

> subjective evidence to support this restriction. Indeed, as noted above he offered only a 9% upper extremity impairment rating regarding the upper extremities in January 2006 (Exhibit 10F).
>
> In reaching the above conclusion, I have considered the assessments made by the state agency medical consultants regarding the claimant's ability to perform basic work activities in accordance with Social Security Ruling 96-6p. These agency physicians found the claimant capable of performing a reduced range of medium work; however, I have not given these opinions great weight because the opinions are those of non-examining physicians who did not have the benefit of personally interviewing the claimant as did I at the hearing. I also note that Dr. Holland, the consultative examiner, found no limitations regarding the claimant's ability to work (Exhibit 6F). However, I do not accord this opinion controlling weight. I fact, I am persuaded that the combination of the claimant's impairments would preclude the ability to perform more than unskilled light work involving no repetitive use of the hands.

(Tr. 19).

I conclude the ALJ had a reasonable basis for not giving significant weight to Dr. Stone's ten-pound lifting restriction.

Plaintiff argues further the ALJ, in making his residual functional capacity assessment failed to consider Dr. Stone's other limitations, namely his recommendation for daytime and night-time supports, limited frequency and duration of grabbing and pulling type activities with the hand, and his recommendation that Plaintiff find other employment if such duty is not available (Tr. 246). Pl. Br. at 7-13. I will address each argument in turn.

First, Plaintiff offered no evidence that the daytime and nighttime supports would limit her ability to perform work. In fact, such braces should improve Plaintiff's ability to work, not impair her ability.

Second, while the ALJ did not decide to confer benefits on the basis of Dr. Stone's opinion recommending limited frequency and duration of grabbing and pulling type activities

11

with the hand, the ALJ did give it weight as he limited Plaintiff to light work with no repetitive use of the hands (Tr. 17-18). The ALJ further pointed out that light jobs do not require the use of the fingers for fine activities (Tr. 18). SSR 83-10.

Third, Plaintiff's argument that the ALJ did not mention Dr. Stone's recommendation that Plaintiff should find other employment if such duty is not available is also without merit because it was not a medical opinion. It did not reflect Dr. Stone's judgment about the nature and severity of Plaintiff's impairment, what Plaintiff could still do despite her impairment, or Plaintiff's physical or mental restrictions. *See* 20 C.F.R. § 404.1527(a)(2) (defining medical opinion).

### Sentence Six Remand

Plaintiff urges the Court to remand this case to consider evidence that was not before the ALJ (Tr. 23, 285-375) (Doc. 10, Pl. Br. at 5-6, 13-15). On judicial review, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . ." 42 U.S.C. § 405(g).

Because none of the evidence submitted to the Appeals Counsel was before the ALJ, the Court cannot reverse based on this evidence. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Casey*, 987 F.2d at 1233. This evidence may be considered only for the purpose of determining whether remand is appropriate under sentence six of 42 U.S.C. § 405(g). *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In order to obtain a sentence six remand, Plaintiff must demonstrate the evidence is new, material, and there exists good cause for the failure to have incorporated this evidence in the prior record. 42 U.S.C. § 405(g), *Cotton*, 2 F.3d at 695.

In order for Plaintiff to satisfy her burden of proof as to materiality, she must demonstrate there is a reasonable probability the ALJ would have rendered a different decision if the evidence had been available for consideration. *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990). A subsequent deterioration or change in condition is not material; rather, if a claimant's condition seriously degenerates, the appropriate remedy would be to initiate a new claim for benefits as of the date the condition aggravated to the point of constituting a disabling impairment. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 712 (6th Cir. 1988). Plaintiff fails to show the new evidence in this case is material because it does not relate to the period on or before the date the ALJ rendered his decision. *See Wyatt v. Sec'y of HHS*, 974 F.2d 680, 685 (6th Cir. 1992) ("Evidence of subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.").

Moreover, this new evidence does not represent a significant departure from the evidence was before the ALJ, and, therefore, is immaterial. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993) (additional evidence not material where it shows "no marked departure from previous examinations"). Indeed, this evidence merely shows Plaintiff had depression and GAF scores ranging from 42 to 55 (Tr. 285-375). The ALJ considered Plaintiff's depression, as he noted Plaintiff had "an adjustment disorder with mixed anxiety and depressed mood" in his summary of Biller's September 2006 mental health evaluation (Tr. 15). He also considered Plaintiff had a GAF score indicative of moderate symptoms or impairment in functioning (Tr. 15).

Furthermore, the lower GAF scores do not require remand because "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's

13

disability based entirely on his GAF score," *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The GAF Scale reports a clinician's judgment of an individual's overall level of functioning and is used in planning, measuring the impact, and predicting the outcome of treatment. *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000) (DSM-IV-TR). However, as the Agency explicitly stated in comments to final rules: "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listing." 65 Fed. Reg. 50746, 50764-65 (2000). Therefore, the GAF score alone is not a grounds to establish severity, any more than a diagnosis, standing alone, establishes severity. *See Young v. Sec'y of Health & Human Servs.*, 964 F.2d 146, 151 (6th Cir. 1990) (mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, it imposes). The Sixth Circuit, along with other circuits, have rejected arguments that an ALJ erred by ignoring GAF scores at or below those contained in the new evidence. *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006) (GAF of 50 not disabling); *Turcus v. Soc. Sec. Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004) (GAF of 35 not disabling); *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) ("Accordingly, we have affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower.") (citing, e.g., *Smith v. Comm'r of Soc. Sec.*, 74 F. App'x 548 (6th Cir. 2003) (GAF score of 48); *Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358 (6th Cir. 2001) (GAF score of 35); *Thurman v. Apfel*, 211 F.3d 1270 (6th Cir. 2000) (GAF score of 50)); *Wilkins v. Barnhart*, 69 F. App'x 775, 780 (7th Cir. 2003) (GAF score of 40). These GAF scores, along with the rest of the substantive information in these records at 385-375, do not meet the materiality standard because they fail to create a "reasonable probability" the ALJ would have granted the Plaintiff benefits. Therefore, a sentence six remand

14

is inappropriate.

## Conclusion

For the reasons stated herein, I conclude there is substantial evidence to support the conclusion of the ALJ and I therefore RECOMMEND the Commissioner's decision be AFFIRMED. I further RECOMMEND defendant's Motion for Summary Judgment (Doc. 13) be GRANTED, and plaintiff's Motion for Judgment on the Pleadings (Doc. 9) be DENIED.[1]

                                               s/William B. Mitchell Carter
                                               UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).